[No. 1981.]

THE GOLD COIN MINING AND LEASING COMPANY v. GOUR-
LAY.

MINES AND MINING—CONTRACTS—BOND AND LEASE—ASSIGNMENT—
OPTION.

Plaintiff owned a one-half interest in a bond and lease of a mine with option to purchase, which it agreed to convey to defendant in consideration of a certain cash payment and an obligation on defendant's part to perform all the conditions, covenants and agreements stipulated to be performed by the lessee in the bond and lease and to pay the purchase price fixed in the title bond, the time fixed for the payment by defendant of the purchase price being two weeks before the expiration of the bond and lease. The contract further provided that if defendant should fail to keep and perform the covenants and agreements stipulated to be kept by the lessee in the bond and lease, defendant should forfeit the cash payment made and all money paid on the bond or on account of work or improvements on the property to plaintiff as liquidated damages. Defendant further agreed, in the event the bond was taken up, to convey to plaintiff a one-eighth interest in the property. *Held* that the contract between plaintiff and defendant was a conditional sale and gave defendant an option to take up the bond or not, as she chose, and having failed to take up the bond the cash payment was forfeited as liquidated damage, and that the agreement to convey to plaintiff one-eighth interest in the property was conditioned upon defendant taking up the bond, and no action could be maintained by plaintiff against defendant for the value of the one-eighth interest.

*Appeal from the District Court of El Paso County.*

Mr. BRUCE GLIDDEN, Mr. J. W. SHEAFOR, Mr. W. F.

SCHUYLER, Mr. KARL C. SCHUYLER and Mr. FRANK MC-LAUGHLIN, for appellant.

Mr. C. S. WILSON, for appellee.

WILSON, P. J.

November 14, 1894, The Mt. Rosa Mining, Milling and Land Company, a corporation, executed to one Isaac Canfield a bond and lease upon certain mining property owned by it in the Cripple Creek mining district. The terms and conditions of this bond and lease are not set forth at length in the pleadings, but from what is there stated, and from the statements of counsel, we assume it to have been in the common and usual form, that the lessee was to perform certain work and labor, and that within a specified time he had an option to purchase the property upon payment of a certain fixed sum. There seems to have been an extension of the agreement, so that the time of the option would expire August 14, 1896. Thereafter, The Gold Coin Mining and Leasing Company, plaintiff in this suit, became the owner by assignment from Canfield of a one undivided one-half interest in his lease and bond. On April 14, 1896, the plaintiff agreed to sell its one-half interest to the defendant, Mrs. Gourlay, and as evidencing the terms and conditions of such sale, the parties entered into an agreement in writing which forms the basis of this suit, appellant being designated therein as the first party and appellee as the second party. We insert such portion of it as is necessary to a proper understanding of the contention of the parties, and the issue to be determined. After certain preliminary statements as to the execution of the bond and lease to Canfield, and a description of the property, the agreement proceeds :

" Whereas, the undivided one-half interest in said mining lease and title bond has been duly, for good and valuable considerations, assigned and transferred to first party ; and

" Whereas, second party is desirous of purchasing the said

undivided one-half interest in said mining lease and title bond, and of availing herself of benefits and advantages which are now possessed by first party with reference to said property, by virtue of said mining lease and title bond; and

" Whereas, first party has sold the said undivided one-half interest in said mining lease and title bond to second party,

" Now, therefore, in consideration of the premises, and of fifteen hundred ($1,500) dollars cash in hand paid by second party to first party, the receipt whereof is hereby confessed and acknowledged, and in further consideration of the express agreements, stipulations and covenants hereinafter expressed, to be kept and performed by the second party, it is agreed as follows:

" That first party will, immediately on demand, on the performance by second party of the stipulations, covenants and agreements hereinafter expressed to be kept by second party, assign and transfer to second party the said undivided one-half interest in and to the said mining lease and bond, dated the 14th day of November, 1894, conveying and transferring all interest which first party now has, or may hereafter acquire in and to the said Adams lode and adjacent fractions described in said lease and bond.

"Second party, in consideration of the premises, hereby covenants, contracts and agrees to and with the first party, with her own money and funds, to pay the said bond so executed by The Mt. Rosa Mining, Milling and Land Company, delivered to Isaac Canfield, dated the 14th day of November, 1894, and perform the conditions of said bond, and pay the money therein provided for, together with the money stipulated to be paid in a certain agreement in and by which the said bond and leases were extended, to wit: the sum of twenty-five thousand ($25,000) dollars, and to pay said sum as provided in said bond on or before the first day of August, 1896.

"Second party further covenants, contracts and agrees with first party, in consideration aforesaid, at her own cost and expense, and with her own funds, to keep, and cause to be

kept and performed, all the conditions, covenants and agreements stipulated to be kept and performed by the said Isaac Canfield and his assigns, as provided in said lease from The Mt. Rosa Mining, Milling and Land Company to the said Isaac Canfield, and at all times within the continuance of the term provided in said bond and lease, and the extension thereof, to keep and perform all the agreements, stipulations, covenants and conditions stipulated to be kept and performed by the terms of said bond and lease, by the said Isaac Canfield, and his assigns, to the end that there shall be no forfeiture of said bond and lease during its term, or during the time for which the same has been by subsequent agreement extended; and that second party will hold first party harmless from all loss through forfeiture, and of all litigation that may be entailed wherein and whereby the said The Mt. Rosa Mining Milling and Land Company may seek to enforce a forfeiture of said bond and lease, time being the essence of this agreement; and in the event second party shall fail, neglect or refuse at any time to keep and perform the stipulations, agreements and covenants so stipulated to be kept by the said Isaac Canfield and his assigns in said mining lease and title bond dated the 14th day of November, 1894, and the agreement extending the time thereof until the 14th day of August, 1896, then, and in that event, the second party shall *ipso facto*, without notice, forfeit to first party all money that she has paid for and on account of this agreement, and all money that may have been paid for and on account of any payments made, or any work done or improvements made upon said property, in any manner whatsoever, as liquidated damages to first party, and shall forfeit all right, title and interest which might become vested in second party by virtue of this agreement, or any payments made thereunder.

" Second party further covenants, contracts and agrees that in the event said bond so dated the 14th day of November, 1894, is taken up by her, and the title to said property is conveyed to second party, second party will immediately organize a company, with a capital stock of two million (2,000,000)

shares at one dollar par, and that she will place six hundred thousand (600,000) shares thereof in the treasury, and out of the remainder give to first party, upon demand, two hundred and fifty thousand (250,000) shares, full-paid and non-assessable, in such company, in full payment of the remainder of the purchase price now due to first party, and such company so to be organized shall become the owner of the entire property and title to the Adams lode claim and adjacent fractions more particularly described in said lease and bond, so dated the 14th day of November, 1894, aforesaid."

The agreement further provides that in the event the defendant should cause the property to be conveyed to any corporation other than that above referred to, she would cause one undivided one eighth of the capitalization of such company to be assigned and delivered to plaintiff, immediately upon the title becoming vested in such company, and in the event the defendant should deem it best not to organize any company, then she would cause to be conveyed to the plaintiff an undivided one-eighth interest in and to the mining property, by deed vesting in the plaintiff a good title, free from all incumbrance, " to the extent that she shall receive the same from The Mt. Rosa Mining, Milling and Land Company." This bond and lease was to expire by its terms on August 1, 1896, it will be observed, being fourteen days before the expiration of the Canfield bond and lease.

The defendant failed or refused to take up the bond by the payment of the purchase money. In all other respects, we assume, because there is no allegation to the contrary, that she complied with all the terms and conditions of her agreement and of the original Canfield bond and lease so as to keep it alive, and prevent forfeiture. The contention of the defendant is that the agreement provided for a conditional sale only, or an option, which option she exercised by an election not to purchase, and that by the express terms of the agreement it was provided that in such event the $1,500 which she paid was forfeited to plaintiff, and constituted liquidated damages, and measured the full extent of her lia-

bility for failure to purchase. On the other hand, it is contended by appellant that the agreement was for an absolute sale, that the forfeiture of the $1,500 should be treated as liquidated damages only for a failure to comply with the terms and conditions of the Canfield bond and lease necessary to keep it alive; that by the terms of the agreement with plaintiff, defendant bound herself to pay the full amount of the purchase money so as to secure a conveyance from the owner of the property; and that the consideration of the agreement whereby plaintiff agreed to sell its one-half interest in the bond and lease to the defendant, was the payment not only of the $1,500, but a subsequent conveyance to plaintiff of an undivided one-eighth interest in the property. Acting upon this theory, the plaintiff has brought this suit to recover from defendant the sum of $3,000, which it alleges was the value of the one-eighth interest in the property which it would have received if defendant had taken up the bond, and conveyed to plaintiff in accordance with the terms of the agreement. The sole question is the construction of this contract with reference to these respective contentions of the parties, the facts being undisputed. We are clearly of opinion that the better reason supports the contention of the defendant.

In order to properly construe the agreement in controversy, and ascertain its true intent, meaning, scope and legal effect, it must be considered in its entirety, not merely with reference to isolated and segregated portions of it.

It will be noted that by it the plaintiff did not assign its interest in the bond and lease to the defendant. It simply agreed to do so upon full compliance by defendant with the terms and conditions therein expressed, one, and a principal one of which was, that defendant should take up the bond and pay the full price therein specified as the purchase money for the property. It was only after this had been done that defendant could have demanded such assignment from plaintiff. In the preamble, it was recited as the pur-

pose and object of defendant in entering into the transaction, that she was desirous of availing herself of the benefits and advantages then possessed by the plaintiff with reference to the mining property by virtue of the mining lease and title bond which had been executed to Canfield, and in which the plaintiff had become the owner to the extent of one half. Now, the benefits and advantages which plaintiff had under the bond and lease were that it, in connection with Canfield, might work, prospect and develop the property, and if it so desired before the termination of the bond, might acquire the full title to the property upon payment of the purchase money; and certainly not the least among these advantages and benefits was, that if plaintiff and Canfield should, after prospecting and developing the property, become satisfied that it was not worth the price asked, they might refuse to exercise their option of purchase, without rendering themselves liable to any further damages or loss, other than that already suffered by the cost and expense of development and prospecting. We naturally conclude, unless there be something further in the agreement showing that the contrary was intended, that this was one of the important advantages and benefits which Mrs. Gourlay desired to secure. In other words, it was intended simply that the defendant should assume the position of plaintiff and Canfield. The succeeding paragraphs confirm this conclusion. Defendant agreed at her cost and expense to perform all the conditions and covenants on the part of Canfield and his assigns as provided in the lease. This, we presume, refers to development work of a certain kind and character required to be performed. In addition to this, defendant agreed to keep and perform all the agreements, stipulations, covenants and conditions stipulated to be kept and performed by the terms of both bond and lease by Canfield and his assigns. And again, it is expressly provided that in the event defendant should fail, neglect or refuse to keep and perform the stipulations, agreements and covenants stipulated to be kept by Canfield and his assigns, not in the lease alone, nor in

the bond alone, but in both bond and lease, then she should forfeit to the first party as liquidated damages not only the $1,500 paid by her to plaintiff on the execution of the contract, but also all money that may have been paid by her for and on account of any payments made on the bond, if any, or any work done or improvements made upon said property ; and also all interest in the property which might have then vested in her by virtue of this agreement, or of any payments which she might have made thereunder. Now, one of the most important stipulations to have been performed by Canfield under the bond was the payment of the purchase money. It seems to us beyond question from the plain and unambiguous meaning of the language employed, that the forfeiture to be suffered by defendant as liquidated damages upon noncompliance with all the conditions of the Canfield bond and lease, expressly covered the condition with regard to the payment of the purchase money. As the parties therefore themselves fixed the amount of damages to be suffered by defendant in the event of her noncompliance, the plaintiff is not entitled to ask any other or further. Again, in still further confirmation of this view, the agreement provided, that "in the event" the bond was taken up by defendant, and the title to the property secured, then she was to make a certain disposition of the one-half interest that would be coming to her,—the agreement being that she would convey or cause to be conveyed a full one-eighth interest in such an event to the plaintiff. The use of the words, "in the event," shows it was then in contemplation of the parties that defendant might elect to not exercise the option of taking up the bond. Her promise to convey to plaintiff a one-eighth interest in the property, for the value of which he brings this suit, was conditional on the event of defendant taking up the Canfield bond, in accordance with its stipulations, and her agreement was that if she failed to take up the bond, she would suffer the forfeitures which we have enumerated, as liquidated damages.

The plaintiff relies greatly, in support of its contention,

upon the words, " in full payment of the remainder of the
purchase price now due to first party," occurring in the par-
agraph where it is provided that in the event the bond is taken
up by defendant, then she will organize a company with a cer-
tain amount of capital stock, and deliver to plaintiff one eighth
of the shares in the corporation so formed.    They insist that
the words, " now due," show that the defendant was absolutely
and unconditionally indebted to plaintiff on account of the
contract to purchase plaintiff's interest by defendant, in a
sum other than the $1,500 paid in cash at the time of the exe-
cution of the agreement.    The words are rather awkwardly
used, and it is somewhat difficult to determine exactly what
they mean, because even conceding the contention of plaintiff
that defendant's promise to take up the bond, and thereafter
to convey a one-eighth interest to plaintiff was absolute and
unconditional, yet the additional consideration certainly was
not due at the time of the execution of the agreement, because
the defendant could not have complied with such a promise,
if made, until after she had secured full title to the property.
In the succeeding clause, wherein the defendant is given the
privilege upon securing title, to convey the property to some
other differently constituted corporation or organization, or
not to convey it at all, if she saw fit, but in either event is
required in such contingency to convey to plaintiff a one-
eighth interest, nothing is said about a conveyance of this
one-eighth interest being due, or required as a part of the
purchase price agreed to be paid to plaintiff in consideration
of its agreement.    In any event, however, conceding that the
conveyance of this one-eighth interest was to be a part, or
balance of the purchase price, the only fair and reasonable
construction of the contract is that her agreement to pay the
same was conditioned upon her taking up the bond, and for
her failure or refusal to take up the bond, the agreement itself
provided certain stipulated forfeitures, as liquidated damages.
We think it manifest that the true intent and meaning of the
contract was that the defendant had an option to take up the
bond or not as she chose, provided, however, that if she did

take it up, she must convey to the plaintiff a one-eighth interest in the property. She having elected not to take up the bond, and having made the forfeitures which were provided as liquidated damages, the plaintiff has no further claims upon her, and cannot maintain this suit.

Such seems to have been the view of the trial court, and its judgment will be affirmed.

*Affirmed.*